TOWNSHIP OF TEANECK, A MUNICIPAL CORPORATION OF THE COUNTY OF BERGEN AND STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. BLOCK 427, LOTS 9–10, ASSESSED TO AMELIA KLUG, AND OTHER LANDS, DEFENDANTS-RESPONDENTS.

Argued September 19, 1955—Decided October 24, 1955.

388

Mr. *John J. Deeney* argued the cause for the plaintiff-appellant.

Mr. *Saul A. Wittes* argued the cause for the defendant-respondent Herbert Harvey.

The opinion of the court was delivered by

BURLING, J. The controversy on this appeal involves the validity of a prior judgment of foreclosure in barring all rights of redemption in lands hereinafter referred to located within the Township of Teaneck in Bergen County.

The present action was instituted by the Township of Teaneck (hereinafter referred to as Teaneck) pursuant to the In Rem Tax Foreclosure Act, *L.* 1948, *c.* 96, *sec.* 1 *et seq.* (*R. S.* 54:5–104.29 *et seq.*), in the Superior Court, Chancery Division, to foreclose certain tax sale certificates of

which it was the owner. Upon a determination favorable to the answering defendant Herbert Harvey (hereinafter referred to as Harvey), *Township of Teaneck v. Block* 427, 33 *N. J. Super.* 608 (1955), an appeal was taken by Teaneck to the Superior Court, Appellate Division. Prior to hearing there this court certified the cause upon its own motion because of the general public importance of the issues raised.

The properties in question are known as lots 32, 33, 34 and 35 *in block lettered "O"* on "Map No. 2 of Knickerbocker Park, Teaneck Township, Bergen County, N. J." One Victor Mutt had acquired these properties by deed from the Knickerbocker Realty Company in 1928. On August 3, 1940 Mutt, by general warranty deed, conveyed to Mary Kuusik-Jackson "all those certain lots . . . known . . . as lots . . . (32) . . . (33) . . . (34) . . . (35) . . . in *Block lettered S*" (emphasis supplied) on the same map of Knickerbocker Park. Mutt, however, never owned the same numbered lots in Block "S."

In 1942 the properties were sold for tax arrearages and bought in by Teaneck, and in March 1952 the municipality instituted proceedings in the Superior Court, Chancery Division, to bar all rights of redemption therein pursuant to the In Rem Tax Foreclosure Act, *supra*. The complaint filed in that action named Mary Kuusik-Jackson as "the name of the person or one of the persons who, according to the records in the office of the county recording officer, appears as a transferee or purchaser of title to the land to be affected by the tax foreclosure proceedings," in accordance with *R. S.* 54:5–104.38(*b*), subsequently repealed by *L.* 1953, *c.* 51, and now embodied in *R. R.* 4:82–7(*a*)(2). The properties were designated in accordance with Teaneck's assessment map in the complaint, and the final decree used both the assessment map identification and the Knickerbocker Park development map description. A copy of the notice of foreclosure was mailed to Mary Kuusik-Jackson, but the lands were not redeemed and a final judgment was entered in November 1952 and later recorded in the Bergen County Clerk's office.

One year later Mary Kuusik-Jackson conveyed "lots . . . (32) . . . (33) . . . (34) . . . (35) . . . *in Block lettered O*

... being the same premises ... intended to be ... conveyed to Mary Kuusik-Jackson ... by Victor Mutt ... on August 23, 1940 ..." to Herbert Harvey. (Emphasis supplied.) Thereafter, Harvey, proceeding on the assumption that the prior foreclosure was defective, addressed inquiries to Teaneck requesting he be allowed to redeem the properties. The invitation was declined.

Teaneck instituted the present action on May 13, 1954, seeking to foreclose all rights of redemption in a number of parcels, including the properties in question. Harvey thereupon tendered the amount necessary to redeem but this was refused. In the complaint it was set forth that Victor Mutt was the "name of the person * * * who, according to the records * * * appears as a transferee or purchaser of title to the land to be affected" in accordance with *R. R.* 4:82–7(*a*)(2) which had superseded *R. S.* 54:5–104.38(*b*). Harvey responded by answer and counterclaim, asserting ownership in the properties and demanding judgment allowing him to redeem. *R. R.* 4:82–7(*f*). Teaneck moved for summary judgment, relying upon the prior judgment to preclude the relief sought by Harvey's counterclaim. Harvey moved for judgment on the pleadings on the strength of his belief that the prior judgment was ineffective to vest title in the municipality. Teaneck, as a preliminary tactic, sought to have that portion of its complaint relating to the properties in question dismissed. The trial court denied this motion and the cause proceeded upon the pleadings, affidavits, and a factual stipulation.

The court below held the prior foreclosure to be defective because the "transferee or purchaser" of the property against which foreclosure was sought was not named in the petition. See *R. S.* 54:5–104.38(*b*) which was in effect at the time. Harvey, by virtue of the deed executed by Mary Kuusik-Jackson, was found to have acquired a sufficient interest in the lots to enable him to redeem. Judgment was entered accordingly and Teaneck pursued an appeal.

The questions to be determined in the disposition of this appeal are as follows:

1. Did the trial court err in denying Teaneck's motion for dismissal of that part of its complaint relating to the properties in question?

2. Is Harvey barred from attacking the prior foreclosure by virtue of *R. S.* 54:5–104.67 or the rules of this court?

3. Did *R. S.* 54:5–104.38(*b*), in effect at the time of the prior foreclosure (since repealed and now embodied in *R. R.* 4:82–7(*a*) (2), require the naming of the last record owner in the complaint of foreclosure?

## ADJECTIVE CONSIDERATIONS

█ Teaneck first contends that its notice of voluntary dismissal of that portion of the complaint concerning the properties in question should have been granted. *R. S.* 54:5–104.62 is said to command this result. That section provides that a plaintiff shall have the right to an order of dismissal as to any parcel of land proceeded against under the In Rem Tax Foreclosure Act. The motion was presented after Harvey had filed his counterclaim and the latter insists that *R. R.* 4:42–1(*b*) precludes the dismissal unless the counterclaim is susceptible of an independent adjudication. The counterclaim, in essence, seeks judgment entitling Harvey to redeem the properties, and Teaneck maintains an independent adjudication can be had.

Without becoming involved in the procedural niceties urged by the parties, it is sufficient to note the unusual position in which Teaneck finds itself. The objective of the present action, so far as it concerns the properties which Harvey seeks to redeem by his counterclaim, appears to be an attempt by Teaneck to confirm the title acquired by the municipality in the prior foreclosure proceeding. The trial judge commented upon this subject thusly:

"While it has been stated by the township attorney in his brief that the second action was filed for the purpose of correcting the description of the lands in question, an examination of the two complaints discloses that the description of the lands in question in both of them is identical, and it is quite clear that the purpose sought to be achieved by the second action was to correct the error resulting from the failure to name the record owner in the first proceeding." (33 *N. J. Super., supra,* at *page* 611)

Teaneck, when confronted with an adversary, sought to retrace its steps and rely solely upon the former decree as a bar to Harvey's attack. *R. S.* 54:5–104.62 contemplates a dismissal as to property after the complaint has been filed and prior to a final judgment but not as an adversary procedural tactic as sought to be employed by Teaneck.

Teaneck considers *R. S.* 54:5–104.67 as a barrier to the attack on the prior judgment of foreclosure. That section limits the time within which an application may be entertained to reopen a judgment procured under the act to three months from the date of recording the judgment. Although the period has long since elapsed, Harvey seeks justification for his attack in *Bonded Certificate Corp. v. Wildey*, 137 *N. J. Eq.* 564 (*E. & A.* 1946), where a final decree barring rights of redemption was reopened beyond the statutory limitation because of the "wholly insufficient inquiry" in determining the parties having an interest in the redemptive right. We do not consider that adjudication in point. It did not concern proceedings pursuant to the In Rem Tax Foreclosure Act. Nor is it necessary to consider the effect of *R. S.* 54:5–104.67 in the light of *Winberry v. Salisbury*, 5 *N. J.* 240 (1950), and *R. R.* 4:62–2, which provides for relief from final judgments. Nevertheless, we conceive Teaneck not to be in a position to urge the statutory limitation. Where a party voluntarily opens an investigation of matters which he might claim to be precluded by a prior judgment he is held to have waived his right to assert the benefit of the former adjudication and the case will be determined without regard therefor. *Cooley v. Snake River Dist. Improvement Co.*, 78 *Or.* 384, 152 *P.* 1190 (*Sup. Ct.* 1915); *Dillard v. McKnight*, 34 *Cal.* 2d 209, 209 *P.* 2d 387, 11 *A. L. R.* 2d 835 (*Sup. Ct.* 1949). See 50 *C. J. S., Judgments*, § 597, *p.* 15.

## MERITS

The controversy has raised important questions relating to the In Rem Tax Foreclosure Act which were not previously

considered by this court in *City of Newark v. Yeskel*, 5 *N. J.* 313 (1950), wherein the constitutionality of the act was upheld.

*R. S.* 54:5–104.38, which was in effect when the prior foreclosure action was instituted, provided *inter alia*:

> "The petition shall set forth:
> a. The tax foreclosure list
> b. The name of the person or one of the persons who, according to the records in the office of the county recording officer, appears as a transferee or purchaser of title to the land to be affected by the tax foreclosure proceedings."

Teaneck named Mary Kuusik-Jackson as the person appearing as a transferee or purchaser of the title in the complaint of the prior foreclosure rather than Victor Mutt, and Harvey contends this singular act was sufficient to infect the proceeding to the extent that Teaneck failed to acquire a fee simple absolute in the properties. His argument is that the statute required the *record owner* of the property to be set forth in the complaint; that Victor Mutt was and still is the record owner of Lots 32–35 in block lettered "O" on Map No. 2 of Knickerbocker Park; that all requirements for the benefit of the owner under the act are to be strictly followed; that the complaint is one of the means by which a person interested in the land can obtain notice of the impending foreclosure.

The foundation of this argument is, of course, that the statute required the naming of the record owner. Teaneck joins issue on this narrow ground by emphasizing the absence of any express reference in the entire act to the naming of the "record owner" as contended for by Harvey and that it satisfied the statute requiring that "a person appearing as a transferee or purchaser" be named in the complaint when it designated Mary Kuusik-Jackson.

The purpose of the statutory provision must be ascertained to determine this question. (In this regard, the provision of the act in force at the time of the prior foreclosure employed the term "petition." That section has since been

amended, *L.* 1953, *c.* 51, and the term "complaint" substituted therefor. *R. R.* 4:82–7(*a*)(2). For purposes of this opinion we must look to the prior statute but we choose to use the term "complaint.") The complaint is to serve several purposes. *R. S.* 54:5–104.41 directs that copies of the complaint are to be filed with the municipal tax collector, the county recording officer, and the State Attorney-General. The copy filed with the Attorney-General constitutes notice of the *in rem* proceeding to the State and all agencies and political subdivisions thereof. *R. S.* 54:5–104.43. The county recording officer is required to index the "proceedings" in the name of all persons appearing in the complaint and in the tax foreclosure list in the same index used for notices of *lis pendens,* and the filing of the complaint is to be noted in the margin of each tax sale certificate referred to in the complaint. *R. S.* 54:5–104.44. Other statutory provisions contemplate the recordation of the tax sale certificate in a mortgage index and a separate block index. *R. S.* 54:5–50. See *R. S.* 54:5–51. *Cf. R. S.* 54:5–104.32.

The effectiveness of the methods designed to apprise the owner of the lands of the impending foreclosure is grounded in the composition of the *"tax foreclosure list."* This list is prepared and certified by the tax collector and is to include, among other items, "the name of the person appearing as the owner of the land to be affected by the foreclosure proceedings as it appears on the *last tax duplicate* of the municipality * * *." *R. S.* 54:5–104.35 (emphasis supplied). The tax duplicate is a true copy of the assessment list, *R. S.* 54:4–35, the composition thereof being the duty of the assessor. *R. S.* 54:4–24. The assessor is required to "ascertain the names of the owners of all real property situate in his taxing district * * *," *R. S.* 54:4–23. It is contemplated that the tax rolls will be currently maintained to the extent possible to reflect the present state of interest in any property. New owners may present their evidence of title to the assessor for proper notation on the tax rolls, *R. S.* 54:4–29, but if they have not done so before recording such title or interest, the duty of informing the assessor is upon

the office where the instrument is filed for record. *R. S.* 54:4–30, 31. Thus, to the extent that current ownership of interest in the lands to be affected by the foreclosure is reflected in the last tax duplicate, it will appear in the "tax foreclosure list" required by the In Rem Tax Foreclosure Act.

The act provides for notice of the proceedings by publication and posting, which is mandatory, and mailing, which is permissive. *City of Newark v. Yeskel, supra.* The core of this notice is the "tax foreclosure list" and not the complaint. The newspaper publication required by *R. S.* 54:5–104.46, 104.47 (now required by *R. R.* 4:82–7(*b*)) must include a copy of the "tax foreclosure list"; *R. S.* 54:5–104.50 required posting of a copy of the newspaper notice in the offices of the tax collector and county recording officer and in three other "conspicuous places" within the taxing district (now required by *R. R.* 4:82–7(*d*)); *R. S.* 54:5–104.49 (now contained in *R. R.* 4:82–7(*c*)) provided that a copy of the notice might be mailed "to each person whose name appears as an owner in said tax foreclosure list" and addressed to such owner as the same may appear on the last tax duplicate.

The complaint, on the other hand, does not fulfill this function. Indeed, it is quite possible that it would reflect a later grantee of the property than the tax foreclosure list for the complaint may be drawn subsequent to the composition of the last tax duplicate. This statement, of course, assumes that the person to be named in the complaint is the person who appears to be the last transferee or purchaser of the title, and unless that meaning is attributed to *R. S.* 54:104.38(*b*) (now embodied in *R. R.* 4:82–7(*a*)(2)) there is no reason for the requirement. It has been previously noted that upon filing the complaint with the county recording officer the proceeding is indexed in the *lis pendens* file in the name of all persons appearing in the complaint and in the tax foreclosure list. *R. S.* 54:5–104.44. (The complaint itself is to contain a copy of the tax foreclosure list, *R. S.* 54:5–104.38, now embodied in *R. R.* 4:82–7). If the complaint was not intended to list any subsequent parties in interest of the lands subject to foreclosure than those

named in the tax foreclosure list it would be a meaningless procedure to consult the records to gather the necessary information to be copied into the complaint under the requirement of *R. S.* 54:5–104.38(*b*), (now embodied in *R. R.* 4:82–7(*a*)(2)). The conclusion must be that an important purpose of the requirement is to invoke the operation of *lis pendens* against any subsequent grantee of the person or persons having a right of redemption in the property subject to foreclosure. *R. S.* 54:5–104.44. Therefore, it must be resolved that the personal designation in the complaint is to be the person or one of the persons who appears to be the *last* transferee or purchaser of the title to the land as that fact is reflected in the office of the county recording officer.

This determination does not aid Harvey. The requirement is to name the person *appearing* as such purchaser or transferee. Mary Kuusik-Jackson appeared to be that person, and Harvey, who derives his title from Mary Kuusik-Jackson, would not deny this. His express intention is to seek reformation of the deed executed by Victor Mutt to Mary Kuusik-Jackson. Just as the latter person appeared to be a purchaser or transferee of the subject properties to Harvey, it also appeared to Teaneck when the complaint in the prior foreclosure was drawn. If Harvey had been of a different opinion he would have negotiated with Mutt for the transfer.

Nevertheless, Harvey would urge that Teaneck failed to render a compliance with the statute. As a matter of methodical precaution it may be conceded that Teaneck might have chosen to name Victor Mutt in addition to Mary Kuusik-Jackson in the complaint. But to the extent that Mary Kuusik-Jackson appeared to be the last transferee or purchaser of the property, it cannot be said that Teaneck failed to render the duty owed to that person as defined by the statute. On the contrary, it has complied with the spirit of the statute to a greater extent than Harvey desires to recognize. Mary Kuusik-Jackson was named in the complaint which was filed with the county recorder. She possessed the beneficial interest in the property and was entitled to

redeem. Notice of the proceedings was mailed to her at her last known address and she failed to redeem. Thereafter final judgment was entered, which was sufficient to divest her of any title in the property. *R. S.* 54:5–104.64(*a*). Harvey obtained nothing as grantee of Mary Kuusik-Jackson.

Harvey contends that the courts should overturn tax foreclosures upon the least flaw in the proceedings and cites *Merewood, Inc., v. Denshaw,* 139 *N. J. Eq.* 182 (*Ch.* 1947), to his support. Compliance with the statutory proceeding is, of course, in order, but this was accomplished. Furthermore, the litigation in the *Merewood* case, *supra,* related to the non-forensic procedure of foreclosure of tax sale certificates. It was not an *in rem* proceeding.

In 1945 the Legislature created the Commission on State Tax Policy, *L.* 1945, *c.* 157. The first report of the commission was rendered in 1946 and a portion thereof was devoted to consideration of tax lien foreclosure. *First Report of the Commission on State Tax Policy, Part II, p.* 41 (1946). The commission recognized the need for remedial legislation to reduce the excessive costs of foreclosing tax delinquent property and the desirability in rendering a marketable title to the purchaser who seeks to return such property to economic utility. Commenting upon the principle of *in rem* foreclosure to achieve these objectives it was said:

"The principle here, applicable alike to all persons, including minors and mental incompetents, is that the sovereignty of the State confers power and responsibility to satisfy lawful claims for the support of government which are a charge upon property located within, and enjoying the protection of, the State. While rare cases of individual hardship might conceivably arise through divestiture of property interest by an action *in rem*, this is outweighed by the general public interest and the interest of other paying taxpayers in the liquidation of delinquent taxes and the clearance of the tax rolls of "dead wood." The allowance of a reasonable time to act, at least four year under the *Commission's* proposal, is deemed more than adequate protection of any individual interests in vacant land." (*First Report, supra,* at *p.* 47.)

Remedial legislation soon followed in the enactment of *L.* 1947, *c.* 333. This act, however, represented a compro-

mised philosophy between the advocates of the *in rem* procedure and the remaining adherents of the *quasi in rem* foreclosure. It was repealed *in toto* by section 41 of the In Rem Tax Foreclosure Act, *L.* 1948, *c.* 96. The latter act represents a purely *in rem* foreclosure; no personal judgment shall be entered. *R. S.* 54:5–104.33. The act is applicable to tax sale certificates held by municipalities, *R. S.* 54:5–104.31, 104.32, and can only be invoked following four years of non-payment of general land taxes, and two years after the date of the tax sale, *R. S.* 54:5–104.34.

The inordinate burden placed upon municipalities which resulted in rendering lands unproductive and unmarketable has been removed, and the property owner himself is to shoulder certain responsibilities in order that his interests may be protected. His attention is to be directed to any one of a number of vehicles by which such notice is required to be imparted by the municipality, namely, newspaper publication, the notices posted in the tax collector's office and in the office of the county recorder, and within the taxing district itself. The legislation providing for the assessment and taxation of real property is notice that default in payment of taxes will lead to a sale and foreclosure of the property interest.

In *City of Newark v. Yeskel, supra,* 5 *N. J.,* at *page* 327, we said:

"A consideration of the notice prescribed by *L.* 1948, *c.* 96 (*N. J. S. A.* 54:5–104.29 *et seq.*) in the light of the prescribed notice and opportunities for hearing and appeal incident to the assessment of the tax, and the prescribed notices incident to the tax sale itself, result in the inescapable conclusion that the statute under attack clearly meets the requirements of constitutional due process as delineated in the numerous decisions of the Supreme Court of the United States and of the various state courts in which the question has been passed upon."

The proceeding is *in rem* and the party in interest cannot complain if his name does not appear in the complaint. *R. S.* 54:5–104.42, in effect at the prior foreclosure (otherwise amended by *L.* 1953, *c.* 51) provided:

"The copy of the petition filed in the office of the county recording officer and the publication of the notice as hereinafter provided shall be notice to the world including all persons claiming any right, title, interest in or lien upon the land sought to be affected by said petition, *whether the names of said persons appear in said petition or not,* of the institution of said foreclosure proceeding *In Rem,* * * *." (Italics supplied)

We therefore decide that Harvey cannot succeed in his counterclaim to effect redemption because he is not the owner of the properties nor has he any interest therein which would enable him to redeem. The prior foreclosure was valid because there was a compliance with *R. S.* 54:5-104.38(*b*) (now embodied in *R. R.* 4:82-7(*a*)(2)). The determination below is reversed. The cause will be remanded for dismissal of Harvey's counterclaim and for further entry of judgment in favor of Teaneck in accordance with this opinion.

HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.