THE TOWNSHIP OF LONG BEACH, A MUNICIPAL CORPORA-
TION, PLAINTIFF, v. LOT NO. 3, BLOCK NO. 9, FORMERLY
ASSESSED TO JENNIE T. MACUSKER (PRESENTLY LOT 5,
BLOCK N–21 ASSESSED TO THREE F ENTERPRISES, INC., A
N.J. CORPORATION, DEFENDANT, AND THOMAS P. FINNER-
TY AND ANNETTE J. FINNERTY, HIS WIFE, INTERVENORS.

Superior Court of New Jersey
Chancery Division Ocean County

Decided February 4, 1983.

*Colin R. Hazeltine* for plaintiff (*Shackleton, Hazeltine & Dasti,* attorneys).

*Michael M. Land* for defendant heirs of Jennie T. Macusker, deceased.

*Reginald J. Raban* for defendant Three F Enterprises, Inc.

*Nathan D. Weiss* for intervenors Thomas P. Finnerty and Annette J. Finnerty, his wife.

WILEY, J.S.C.

This action involves the question of title to a parcel of land known as Lot 3, Block 9 located in the Township of Long Beach. Jennie T. Macusker obtained title to these premises by deed dated June 20, 1911 from James Murray and recorded in the Ocean County Clerk's Office, Toms River, New Jersey, in Deed Book 389, page 12. On September 19, 1921 the Township of Long Beach acquired a tax sale certificate on the lot, dated October 29, 1921, and recorded in the Ocean County Clerk's Office in Mortgage Book 149, page 261. The tax sale certificate recited that the property was assessed to Jennie T. Macusker and it was sold to the township for $4.74, which included unpaid taxes for 1920 of $2.52 plus costs.

On November 20, 1954 the township filed an *in rem* foreclosure action against several tax sale certificates. Lot 3, Block 9, was listed in the caption of the complaint as assessed to Mamie Todd or Mary W. McMurray, not Jennie Macusker. Nowhere in the body of the complaint were there any claims asserted against Lot 3, Block 9. Moreover, the tax foreclosure list attached to the complaint, which was supposed to recite the tax sale certificates to be foreclosed and names the assessed owners of the lands, also failed to list Lot 3, Block 9.

Copies of the complaint were filed with the Tax Collector of Long Beach Township, the Ocean County Clerk and the State Attorney General. Notice of the *in rem* foreclosure was published in the *Beach Haven Times* on January 4, 1955. The affidavit of publication indicates that Lot 3, Block 9, was not included in the published notice. An affidavit by James Wilson, attorney for the township, indicates that notice of the action was mailed to all individuals whose names appeared on the tax foreclosure list as owners of the properties affected. However, it would appear that neither Jennie Macusker nor anyone else on her behalf received notice by mail of the pending foreclosure on Lot 3, Block 9, since that lot was never listed on the tax foreclosure list.

Final judgment in this matter was entered on March 1, 1955 and recorded on March 4, 1955 in the Ocean County Clerk's Office in Deed Book 1619, page 189. Again Lot 3, Block 9, was listed in the caption as assessed to Mamie Todd or Mary W. McMurray, but Lot 3, Block 9, was missing from the body of the judgment.

On May 6, 1955 the township sold several lots, including Lot 3, Block 9, at a public sale to Marion and Theodore J. Fluehr. Notice of the public sale was published in the *Beach Haven Times* on April 26 and May 3, 1955. No one appeared and objected to the proposed sale. The township then gave a deed to the Fluehrs on June 10, 1955, which deed was recorded on August 20, 1958 in the Ocean County Clerk's Office in Deed Book 1918, page 219. The deed ostensibly conveyed title to the lots bought by the Fluehrs at the public sale, including Lot 3, Block 9. The Fleuhrs later conveyed their interest in the lot in question to Three F Enterprises, Inc. by deed dated June 28, 1980 and recorded July 23, 1980 in the Ocean County Clerk's Office in Deed Book 3933, page 509.

Three F Enterprises entered into an agreement of sale with Thomas P. and Annette J. Finnerty on January 20, 1981 to build a house on the parcel of land in question and convey the

property to the Finnertys. Although single-family homes had been constructed on some of the lots the township had conveyed to the Fluehrs in 1955, Lot 3, Block 9, had remained vacant. Moreover, sometime within the period from 1955 to 1981 the township had rezoned the area. The parcel which was known as Lot 3, Block 9, is now fully enclosed in a larger parcel presently known as Lot 5, Block N–21.

The house was constructed and a closing scheduled. However, the buyer's title insurance binder raised an exception concerning Lot 3, Block 9. The title binder indicated that the lot was subject to reforeclosure because of the irregularities in the final judgment of the 1955 *in rem* foreclosure, enumerated above. Three F and the Finnertys entered into a modified agreement, dated June 10, 1981, giving possession of the property to the Finnertys, pending removal of the title exception by Three F, upon payment of a portion of the consideration.

Three F Enterprises requested, pursuant to *N.J.S.A.* 54:5–104.73, that the township reforeclose Lot 3, Block 9. The township adopted a resolution authorizing the reforeclosure and this action was commenced. The heirs of Jennie Macusker—Celestia Koerner, Nelson L. Adshead and Jean A. Fedalen—filed an answer seeking to redeem the property. A motion made by the Finnertys, seeking leave to intervene in this reforeclosure action, was granted. The Macusker heirs then made a motion for summary judgment. Three F and the Finnertys cross-motioned for summary judgment.

The In Rem Tax Foreclosure Act allows a municipality to proceed, *in rem,* summarily to bar rights of redemption after the tax sale certificate has been recorded in the office of the county recording officer. *N.J.S.A.* 54:5–104.32. *N.J.S.A.* 54:5–104.31 states the policy behind the act:

> This act shall be liberally construed as remedial legislation to encourage the barring of rights of redemption, and is an alternate and additional remedy to any other remedy provided by law, and shall apply to certificates of tax sales heretofore or hereafter issued by a municipality.

■ Presently notice of an *in rem* foreclosure must be sent by mail if an owner's name and address appear on the municipality's tax rolls, in order to satisfy both state and federal due process guarantees. *Montville Tp. v. Block 69, Lot 10,* 74 *N.J.* 1, 19–20 (1977); *N.J.S.A.* 54:5–104.42. However, in 1954, when the complaint was filed by the township in the original *in rem* foreclosure, notice to all persons having any title or interest in the land was accomplished by posting and publication. The validity of this notice, as satisfying the requirements of due process, was upheld in *Newark v. Yeskel,* 5 *N.J.* 313, 327 (1950). *Yeskel* was overruled in *Montville, supra,* however; the latter opinion specifically held that its decision was to be applied prospectively only. 74 *N.J.* at 20.

The *Yeskel* decision enumerated the requirements of the 1948 In Rem Tax Foreclosure Act in effect at the time of the 1954 foreclosure: the municipality must, by resolution, prepare a tax foreclosure list, containing, among other things, a description of the premises, the amount required to redeem and the name of the person appearing as the last owner. A complaint must be filed, setting forth the tax foreclosure list, the description of the lands affected and the names of the persons who appear to be the record owners. A copy of the complaint must be filed with the municipal tax collector, the county recording officer and the Attorney General. The municipality must obtain an order of publication under which a statutory form of foreclosure notice, including a copy of the tax foreclosure list, must be published once in a newspaper circulating in the municipality. Within 15 days of publication, a copy of the notice must be posted in the office of the tax collector, the office of the county recording officer and in three other conspicuous places in the taxing district. 5 *N.J.* at 324–325.

*Teaneck Tp. v. Block 427, Lots 9–10,* 19 *N.J.* 386 (1955) further elaborated on the notice requirements under the 1948 act. In that case a defendant, who had acquired an interest in property which had earlier been foreclosed upon by Teaneck Township, sought to challenge the judgment as ineffective to vest title in

the township because the complaint did not name the record owner of the property. Defendant contended that the complaint was one of the means by which interested parties did obtain notice of the *in rem* foreclosure.

The court found that the complaint did not serve a notice function, but rather served to invoke the operation of a *lis pendens* against any subsequent grantees of the lands. Thus, the complaint did not need to name the record owner but rather the person who appeared to be the last transferee or purchaser of title to the lands. *Id.* at 395–396. The opinion stated that effective notice of the impending foreclosure was grounded instead in the composition of the tax foreclosure list, which must be incorporated as part of the publication and posted. *Id.* at 394–395.

*N.J.S.A.* 54:5–104.35 sets forth the components of the tax foreclosure list. The list must be prepared and certified by the tax collector and schedule the lands and certificates in numerical sequence. It must contain a description of the land as it appears on the tax duplicate and tax sale certificate. *N.J.S.A.* 54:5–104.-35(b). It must also state the name of the person appearing as the owner of the land to be affected by the foreclosure proceedings as it appears on the last tax duplicate of the municipality. *N.J.S.A.* 54:5–104.35(i).

In the instant case the notice given to Jennie Macusker and her heirs of the 1954 foreclosure was insufficient, even under the limited notice requirements set forth in *Yeskel* and *Teaneck Tp., supra.* The tax foreclosure list attached to the complaint did not list Lot 3, Block 9. Neither did the published notice in the *Beach Haven Times,* nor the posted notice. It is clear that the 1921 tax sale certificate described the parcel as Lot 3, Block 9, and named the record owner as Jennie Macusker. Thus, the township had this information available to it when the tax foreclosure list was prepared in 1954. Without proper notice, there is no way that Macusker or her heirs could have been alerted of the right to redeem. Furthermore, without

proper notice, the court lacked jurisdiction to foreclose upon the tax sale certificate. *Lakewood Tp. v. Block 251, Parcel 34, Lots 3359 to 3370, Incl.,* 48 *N.J.Super.* 581 (App.Div.1958). Thus, Macusker's right to redeem was not cut off by the *in rem* foreclosure. *Id.* at 590.

■ Further, the township, by bringing this reforeclosure action pursuant to *N.J.S.A.* 54:5–104.73, has waived any right it had to bar the Macusker heirs' right to reopen the judgment under *N.J.S.A.* 54:5–104.67 and *R.* 4:50 *et seq.* and to redeem. *Teaneck Tp., supra,* 19 *N.J.* at 392; *Lakewood Tp., supra,* 48 *N.J.Super.* at 590–591. The Finnertys and Three F Enterprises argue that the original judgment is valid and this action was brought only to cure clerical irregularities. The complaint filed by the township would seem to indicate otherwise. At any rate, the defect in this case, lack of notice, is such, that the only way to cure it would be to reopen the original judgment. As stated above, the township cannot prevent the Macusker heirs from asserting their right to redeem when the township by its own action seeks to reopen the judgment.

■ Notwithstanding the right to redeem, the Macusker heirs are required to convey their interest in the property to the Finnertys pursuant to *N.J.S.A.* 54:5–104.100 *et seq.* *N.J.S.A.* 54:5–104.100 provides:

> Where premises are owned, or are thought to be owned, by an individual or individuals occupying, or intending to occupy the same himself or themselves as a single family residence, whether or not a home is partially or fully erected thereon, and whether said premises will constitute the full lot or yard for the home or a portion thereof, any claim of title, lien, encumbrance, restriction or limitation against a fee simple absolute title in said individual or individuals, whether or not asserted in litigation or in any other way, shall be conveyed by the owner of such claim to said individual or individuals upon his or their request and upon payment to said owner by or on behalf of said individual or individuals of the amount paid by the owner to acquire said interest . . . plus interest at the rate of 6% per annum from the date of such acquisition by said owner to the date of such payment.

The Macusker heirs contend the Finnertys do not fall within the class of "individuals" named under *N.J.S.A.* 54:5–104.100 because the Finnertys are not the record owners of the premises

and because Three F Enterprises, the record owner, is not an individual occupying, or intending to occupy, the premises as a single-family residence. The statute should not be construed so narrowly. The Finnertys signed an agreement of sale, paid a portion of the consideration for the premises and have gone into possession and are living on the premises. By doing this they became equitable owners of the premises. The court finds this to be sufficient to satisfy the requirements of *N.J.S.A.* 54:5–104.100.

Nor does *N.J.S.A.* 54:5–104.103 require the Finnertys to be the record owners of the property before they are entitled to require the Macusker heirs to convey their interest. This statute provides:

> Within the meaning of this act, premises shall be deemed to be "thought to be owned" where an individual or individuals have color of title by virtue of any deed whatsoever, devise, inheritance, *or by virtue of a tax sale certificate, if foreclosure proceedings on said certificate have been completed* (whether by said individual or individuals or others) *and have resulted in a judgment purporting to foreclose the interests named therein,* even if said foreclosure proceedings resulting in said judgment are void as against an owner subject to the provisions of this act, or his predecessors in interest. [Emphasis supplied]

Clearly, *N.J.S.A.* 54:5–104.103 does not limit an individual's ability to obtain color of title through deed only. The statute specifically provides that color of title can be obtained by a defective tax foreclosure, even if the final judgment is void against the owner of the claim of title or his predecessors in interest. In this case the Finnertys' color of title comes through the tax sale certificate which was defectively foreclosed by the township in 1955.

Moreover, a careful reading of *N.J.S.A.* 54:5–104.101, which sets forth the conditions under which this act applies, does not limit its application to individuals who are or who are thought to be the record owner of the premises.

> This act shall apply only where the *occupancy* or *intention to occupy,* or the ownership or belief of ownership of said individual or individuals or his or their predecessors in interest derives in whole or in part from defective tax sale or defective tax foreclosure proceedings, and where said individual or individuals acquire his or their *interest* or ownership or *purported interest* or ownership

without actual knowledge of the outstanding claim of the owner or his predecessor as mentioned above, and where the owner of such outstanding claim acquires same with knowledge, constructive or actual, that said individual or individuals were attempting or might attempt or might have attempted to foreclose or purchase or *otherwise acquire* said outstanding interest or claim. [Emphasis supplied]

The Finnertys' interest in Lot 3, Block 9, as equitable owners thereof, coupled with their intention to occupy the premises, is sufficient for them to fall within the category of "individuals" contemplated by the act.

In the instant case the Finnertys and their predecessors in interest, Three F Enterprises and the Fluehrs, acquired their ownership interest in Lot 3, Block 9, through the township's defective tax foreclosure. The Finnertys acquired their interest in the parcel without knowledge of the Macusker heirs' claim, since they did not learn of the defective foreclosure until it was revealed by the title insurance company's search after the agreement of sale was signed.

Furthermore, the Macusker heirs had at least constructive knowledge of the Finnertys' attempt to acquire the heirs' interest in the property and of the prior attempts by the Fluehrs and Three F Enterprises. None of the affidavits filed by the heirs denies the existence of the 1921 tax sale certificate or the fact that Mrs. Macusker failed to pay any taxes on the property since 1920. A property owner knows that he must pay taxes on his property, and that if he fails to do so the municipality will sell the property (or the tax sale certificate) for the price of taxes due and owing. Thus, the Macusker heirs cannot argue, more than 60 years after the failure to pay taxes, that they never suspected that the township would at some point move to cut off their interest.

Even without considering what the Macusker heirs should have suspected regarding the property, it is uncontroverted that prior to the time the township sold or attempted to sell the lot to the Fluehrs, notice of the public sale was published in the *Beach Haven Times* on April 26 and May 3, 1955. We hold that this published notice was sufficient to give the Macusker heirs

constructive notice of the fact that the Fluehrs were attempting to purchase the heirs' interest in the premises.

Moreover, the equities of this case mandate that the provisions of *N.J.S.A.* 54:5–104.100 should be applied. The policy of the In Rem Foreclosure Act is to encourage barring rights of redemption in order to get the affected property back on the tax rolls. See *N.J.S.A.* 54:5–104.31. Here, no taxes have been paid by the record owner or any of her successors in interest for over 60 years. The amount of unpaid taxes involved is very small, under $5. Although Mrs. Macusker and her heirs never received notice of the *in rem* foreclosure, they did receive notice, sufficient at the time it was given, of the public sale of the property in 1955. Yet no one stepped forward to object to the sale at that time.

In fact, the Macusker heirs did not assert any interest in the parcel until after this present action was instituted, more than 25 years later. In the interim the lot has been conveyed twice to two separate parties, who for all intents and purposes were treated as record owners of the premises with title in fee simple absolute and paying taxes thereon. The property has been rezoned and the lot in question is now only a portion of the present parcel. A house has been constructed and property was to be conveyed to a third party when the title search revealed a difficulty in a tax foreclosure which had stood unquestioned for over 25 years. The parties then entered into an amended agreement whereby the Finnertys were given possession of the premises pending the outcome of the reforeclosure. The Macusker heirs did not file an answer until September 1982, more than a year after the Finnertys obtained possession of the premises.

Assuming, *arguendo,* that Mrs. Macusker and her heirs had no actual knowledge of what had transpired, they cannot have been unmindful that their interest in the property would not continue forever if they failed to pay taxes. And, in fact, they never showed any interest in the property for all this time, only

fortifying the suspicion that they thought their interest had been cut off. Given the apparent policy behind *N.J.S.A.* 54:5–104.100 *et seq.* to protect the titles of residential real estate, it appears that this is a clear case for its application.

The Macusker heirs shall convey their interest in Lot 3, Block 9, to the Finnertys subject to the Finnertys paying to the heirs the value of the tax sale certificate plus 6% interest from the date of its issuance until the present. The Macusker heirs' motion for summary judgment is denied and the motions by Three F Enterprises and the Finnertys for summary judgment are granted.