**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3389-19

RAYMOND GONZALEZ,

     Plaintiff-Respondent,

v.

WORLD MISSION SOCIETY,
CHURCH OF GOD, A NJ
NONPROFIT CORPORATION,

     Defendant-Appellant.

_____

Argued January 12, 2022 – Decided February 24, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1025-18.

Steven L. Procaccini argued the cause for appellant (Nissenbaum Law Group, LLC, attorneys; Steven L. Procaccini, of counsel and on the briefs; Corey L. LaBrutto, on the briefs).

Peter L. Skolnik argued the cause for respondent (Clark Guldin, attorneys; Peter L. Skolnik, of counsel and on the brief).

PER CURIAM

Defendant World Mission Society, Church of God (defendant or World Mission) appeals from a series of orders that denied its motion to compel discovery, declared a confidentiality agreement unenforceable, and denied in part its request for injunctive relief. Having reviewed the arguments, we affirm and find no basis to reverse any of the orders entered by the trial court.

I.

This appeal arises out of a dispute between World Mission and plaintiff Raymond Gonzalez (plaintiff or Gonzalez), a former member of World Mission. We discern the relevant facts from the record.

In 2005, Gonzalez became a congregant of World Mission, which is a non-profit religious organization. When he joined World Mission, Gonzalez was an eighteen-year-old college student. Eventually, Gonzalez dropped out of college, became a "deacon" at World Mission, and helped to develop various websites and email systems for World Mission. He, however, was never an employee of World Mission.

Gonzalez also was involved with certain litigations in which World Mission was a party, and he had communications with attorneys representing World Mission. Several of those litigations involved a former congregant,

Michele Colón. Colón had criticized World Mission and described it as a "cult" that destroys families and uses mind control over its members.

In December 2011, World Mission filed a defamation action against Colón in Virginia (Colón I). That matter was dismissed for lack of personal jurisdiction over Colón. Shortly thereafter, World Mission filed an identical defamation action against Colón in the Law Division in Bergen County (Colón II). Gonzalez took part in discussing legal strategies concerning Colón I and Colón II. In February 2015, the court granted summary judgment in favor of Colón in Colon II, and World Mission did not file a timely appeal.

On January 1, 2012, Gonzalez signed a confidentiality agreement (Confidentiality Agreement), which stated that he would treat "all information disclosed by [World Mission] to" him as confidential information that "shall not be disclosed to any third party." In relevant part, the Confidentiality Agreement stated:

> It is recognized that it may be necessary or desirable to exchange confidential information between [World Mission] and Member for the purpose of spiritual or personal understanding.
>
> . . . .
>
> 1. Except as otherwise provided in this Agreement, all information disclosed by [World Mission] to the Member is Confidential Information, and (1) shall

remain the exclusive property of [World Mission], (2) shall be used by the Member only for the Purpose set forth above, (3) shall be protected by the Member and, (4) all confidential information acquired by the Member during mutual membership with [World Mission] shall not be disclosed to any third[-]party for any purpose nor transmitted by any means.

2.     Confidential Information shall constitute all information concerning [World Mission] (whether prepared by [World Mission], its representatives, members or others), whether furnished before or after the date of this Agreement and regardless of the manner in which it is furnished and includes, without limitation, any:

> (i) Teachings . . .
>
> (ii) Books published by [certain publishers or] any other information or publication prepared by [World Mission] through any means of transmission.
>
> (iii) Information from counseling sessions . . . .
>
> (iv) Notes or recordings taken by Member in any indoor or outdoor service or event.

3.     Except as specifically authorized by [World Mission] in writing, the Member shall not reproduce, use, distribute, disclose or otherwise disseminate the Confidential Information and shall not take any action causing, or fail to take any action necessary to prevent, any Confidential Information disclosed to the Member pursuant to this Agreement to lose its character as Confidential Information.

A-3389-19

. . . .

> 5. The Member's duty to protect the Confidential Information pursuant to the Agreement extends both during the term of this Agreement (including any extension or renewal thereof) and after its expiration or termination.

Gonzalez and World Mission dispute Gonzalez's role in the preparation of the Confidentiality Agreement. World Mission contends that Gonzalez drafted the agreement. By contrast, Gonzalez asserts that he was given a draft of the agreement and then he acted as a scribe by incorporating edits dictated by another congregant.

What is not in dispute is that Gonzalez signed the Confidentiality Agreement at a meeting held on January 1, 2012. That meeting was attended by approximately seventy World Mission parishioners, deacons, missionaries, and pastors. No attorney attended the January 1, 2012 meeting, and Gonzalez signed the Confidentiality Agreement without consulting a lawyer.

Gonzalez claims that no one explained the Confidentiality Agreement to him, and he was ordered to sign the Agreement or face excommunication from World Mission. World Mission disputes Gonzalez's contention and asserts that the Confidentiality Agreement was explained, and no threats were made to Gonzalez before he signed it. In December 2012, eleven months after signing

A-3389-19

the Confidentiality Agreement, Gonzalez ceased attending and ended his relationship with World Mission.

In 2013, Colón filed a lawsuit against World Mission alleging that it had fraudulently extracted donations of money and hacked into her private internet account, causing her severe emotional distress (Colón III).  Eventually, the claims in Colón III were dismissed except for Colón's claim of invasion of privacy.

In 2016, Colón filed a second action against World Mission (Colón IV).  By that time, the claims in Colón II had been dismissed.  Colón alleged that World Mission had abused process in bringing Colón I and Colón II and had intentionally inflicted emotional distress on her.

In August 2017, Gonzalez signed a certification that was filed in Colón IV.  Gonzalez also provided Colón's counsel with information and documents.  As a result, in late August 2017, five years after he left World Mission, World Mission claimed Gonzalez had breached the Confidentiality Agreement by disclosing confidential information to Colón and her lawyer.  Accordingly, World Mission moved to strike Gonzalez's certification in Colón IV and sought a protective order preventing disclosure of information World Mission asserted was protected by the Confidentiality Agreement.

A-3389-19

The court in Colón IV granted that application in an order filed on September 29, 2017. Without addressing the validity of the Confidentiality Agreement, the court prohibited Gonzalez from disclosing confidential information as defined in the Confidentiality Agreement. Gonzalez and Colón were also ordered to produce to World Mission "any and all documents" constituting "confidential information" under the Confidentiality Agreement. In response to that order, Gonzalez produced approximately 7,000 pages of documents to World Mission.

In December 2017, Gonzalez, representing himself, filed this declaratory judgment action seeking to invalidate the Confidentiality Agreement. He alleged twelve "counts," asserting that the Confidentiality Agreement was overbroad and vague, a product of undue influence, duress, and fraud, and that the Agreement was procedurally and substantively unconscionable and lacked consideration. In response, World Mission filed an answer and counterclaims for (1) breach of contract; (2) breach of fiduciary duty; (3) conversion; and (4) injunctive relief.

Thereafter, Gonzalez retained an attorney and the parties engaged in discovery. The litigation quickly became contentious, and there were numerous disputes concerning discovery. World Mission served interrogatories and

7

document demands, and Gonzalez answered that he had produced all responsive information and documents in Colón IV. For its part, World Mission refused to provide Gonzalez with a statement of its alleged damages or to produce certain electronic documents.

Those discovery disputes also arose in Colón III and Colón IV. World Mission declined to produce to Colón documents Gonzalez had produced to World Mission, contending that those documents were confidential and privileged. Sometime thereafter, Gonzalez removed the materials he considered privileged from the production he had made to World Mission, uploaded those remaining documents to a folder on Dropbox, an online file hosting service, and shared a link to that folder with Colón.

World Mission, Gonzalez, and Colón moved and cross-moved to compel discovery from each other. Those motions and cross-motions were filed both in this action and in Colón III and Colón IV. On February 1, 2019, the judge overseeing this matter and the judge overseeing the Colón matters jointly heard arguments on the motions and cross-motions to compel discovery.[1] The ensuing

_____

[1]  We note that it is an unusual procedure for two judges overseeing separate matters to address motions jointly and to issue joint orders and opinions. Because no party has raised an issue concerning that practice, we do not comment on it further, but we also do not endorse that practice. Indeed, we note that the trial court had previously denied motions to consolidate the matters.

8

oral argument was long, with numerous contentions. The judges asked counsel to bring any missed issues to their attention, but World Mission never expressly discussed the interrogatory or document demand it now seeks to raise on this appeal.

On February 5 and 11, 2019, the judges issued orders in this matter and the Colón matters addressing the discovery disputes. In this matter, the judge granted in part and denied in part World Mission's motion to compel discovery, but it did not expressly address World Mission's interrogatories or document demands to Gonzalez. In Colón IV, the judge ordered World Mission to produce to Colón the documents Gonzalez had produced to World Mission.

Thereafter, the parties continued to dispute whether most of the documents produced by Gonzalez were protected by the attorney-client privilege, the work-product doctrine, or the "church autonomy" doctrine. Eventually, approximately 5,000 pages of documents were turned over to the court for in-camera review.

In the February 2019 orders, the judges also directed Gonzalez to move to declare the Confidentiality Agreement invalid. Accordingly, in March 2019, Gonzalez filed that motion. World Mission simultaneously moved for a protective order in Colón III and Colón IV, seeking an order requiring Colón to

destroy the documents she had received via the Dropbox link created by Gonzalez.

On May 13, 2019, after hearing oral argument, the judges in this matter and the Colón matters issued a joint order declaring the Confidentiality Agreement "invalid, unenforceable and void." The judges also issued a fifty-two-page written opinion explaining that ruling.

Initially, the judges found that the matter was ripe for declaratory judgment. In that regard, the judges noted that World Mission had not filed an action against plaintiff before he brought his declaratory judgment action. In addition, the judges found that plaintiff had no adequate remedy available at law.

The judges then found three grounds for invalidating the Confidentiality Agreement. First, they held that the Agreement was substantively unconscionable. Examining the Confidentiality Agreement, the judges held that the information it sought to protect was not the type of information protectable by confidentiality agreements. The judges also found that the Agreement was not clear in setting expectations as to what was covered and what obligations the Agreement imposed.

 A-3389-19

Second, the judges found that the Confidentiality Agreement was procedurally unconscionable. In viewing the bargaining powers between Gonzalez and World Mission, the judges found that the agreement was a contract of adhesion.

Third, the judges found that the Confidentiality Agreement was unenforceable because it lacked consideration. They rejected World Mission's argument that Gonzalez had signed the Agreement in connection with his continued employment at World Mission. The judges found that the Agreement had not been offered in connection with Gonzalez's employment; instead, it was offered to Gonzalez, as well as other members of World Mission, as congregants.[2]

Finally, the judges found that the Confidentiality Agreement violated public policy and was not enforceable because it was against the public's interest. Noting that both the New Jersey Legislature and courts have disfavored non-disclosure agreements, the judges found that World Mission had not identified any interests worthy of protection. In addition, the judges declined to

---

[2] At oral argument before us, counsel for World Mission acknowledged that Gonzalez was never employed by World Mission.

 A-3389-19

excise the offending portions of the Confidentiality Agreement to make it enforceable.

The judges denied without prejudice World Mission's request for a protective order. Instead, they appointed a special discovery master to review the thousands of pages of documents in dispute and provide the court with a report making recommendations concerning which documents were protected by privileges and which were subject to production.

Thereafter, World Mission dismissed its counterclaims for conversion, breach of contract, and breach of fiduciary duty. Consequently, World Mission's only remaining claim was for injunctive relief.

In September 2019, World Mission moved for summary judgment on its injunctive-relief claim. World Mission sought an injunction to prevent Gonzalez and Colón from using or disclosing documents World Mission claimed were protected by the attorney-client privilege, the work product doctrine, or the church autonomy doctrine. The Church also renewed its application for a protective order to prevent the disclosure of those documents. Gonzalez cross-moved to dismiss the injunction claim.

On February 12, 2020, the two judges jointly signed and filed an order in this matter and the Colón matters addressing the claims of privilege and the

request for a protective order. The judges also issued a written opinion. In short, the judges found some but not all the documents to be protected by privileges. Having reviewed a report by the special discovery master, the judges identified, in Appendices A and B to their order, the limited number of documents that were protected by the privileges.

On February 20, 2020, the two judges jointly executed and filed an order granting in part and denying in part World Mission's summary judgment motion. They found that most documents possessed by Gonzalez were not protected from disclosure. In making that ruling, the judges rejected World Mission's broad assertions of attorney-client privilege, attorney work-product doctrine, and cleric-penitent privilege. In short, Gonzalez was permanently enjoined from disseminating privileged documents identified in Appendix A to the February 12, 2020 order. Gonzalez was also permanently enjoined from disseminating the email addresses, phone numbers, and home addresses of World Mission's congregants.

World Mission moved to stay the trial court's summary judgment order. The trial court, however, denied that motion. World Mission then applied to us for emergent relief to stay the order, but we denied that request.

A-3389-19

On March 19, 2020, the trial court amended its February 20, 2020 order. The amended order clarified that (1) Gonzalez's cross-motion for summary judgment was granted in part and denied in part; and (2) all of Gonzalez's other claims in his declaratory judgment action were voluntarily dismissed. Consequently, the March 19, 2020 order made clear that it was a final order because the court had ruled on Gonzalez's claim for declaratory relief and World Mission's counterclaim for injunctive relief. World Mission thereafter filed a timely notice of appeal.

## II.

On appeal, World Mission presents three main arguments, with numerous sub-arguments. First, it contends that the trial court erred by denying its motion to compel Gonzalez to respond to interrogatories and document demands. Second, World Mission argues that the trial court erred by declaring the Confidentiality Agreement invalid and unenforceable. Finally, it asserts that the court erred by imposing an inadequate injunction on Gonzalez. We are not persuaded by any of these arguments, and we affirm the interim and final orders entered by the court in this matter.

A-3389-19

A. The Discovery Requests

We review trial court orders concerning discovery using an abuse of discretion standard. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). Accordingly, we "generally defer[] to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 453 (2014) (quoting Pomerantz, 207 N.J. at 371). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). Here, we discern no abuse of discretion.

World Mission argues that it was denied meaningful discovery and takes issue with Gonzalez's refusal to answer its interrogatories and document requests. The parties' discovery disputes, together with other issues, were addressed by the trial court during a hearing on February 1, 2019. World Mission complains that it never had the opportunity to argue for the discovery it was seeking. The record rebuts that argument. The court heard extensive arguments for three hours and expressly directed counsel to identify specific

15

issues they wanted the court to address given that there were so many issues raised by the various parties. Because World Mission did not expressly raise the interrogatories and document demands, it is hard to identify any abuse of discretion by the trial court.

More substantively, World Mission fails to identify specific discovery that relates to the substantive issue of the enforceability of the Confidentiality Agreement and the injunction it sought against Gonzalez. World Mission identifies interrogatories seeking general information such as "each and every person" with "any knowledge or information relating" to Gonzalez's claims or defenses. World Mission also contends that it needed discovery concerning Gonzalez's drafting, understanding, and execution of the Confidentiality Agreement. It fails, however, to explain how any of that alleged discovery would go to the legal issue of the enforceability of the Confidentiality Agreement. World Mission also fails to explain how any of that general information would affect its request for injunctive relief concerning documents that had been produced in discovery. Consequently, we discern no abuse of discretion concerning the trial court's order related to discovery and the orders issued on February 5 and 11, 2019.

16

B.    The Confidentiality Agreement

World Mission argues that the trial court committed reversible error in declaring the Confidentiality Agreement unenforceable on procedural and substantive grounds. Procedurally, World Mission contends that the court used the wrong standard for a declaratory judgment and erred in voiding the entire agreement. Substantively, World Mission asserts that material issues of disputed fact precluded a declaration that the Confidentiality Agreement is unenforceable. We disagree.

Under the Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, a person "whose rights, status or other legal relations are affected" by a written contract "may have determined" and obtain a declaration concerning "any question of construction or validity arising under" the contract. N.J.S.A. 2A:16-53. "A contract may be construed either before or after a breach thereof." N.J.S.A. 2A:16-54. A controversy is appropriate for declaratory judgment where the facts "present 'concrete contested issues conclusively affecting' the parties' adverse interests." In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 275 (2017) (quoting N.J. Tpk. Auth. v. Parsons, 3 N.J. 235, 240 (1949)).

We review rulings on procedures concerning declaratory judgments for an abuse of discretion. In re State Comm'n of Investigation, 108 N.J. 35, 46 (1987);

Util. Blade & Razor Co. v. Donovan, 33 N.J. Super. 566, 570-71 (App. Div. 1955). Here, the trial court correctly found that the validity of the Confidentiality Agreement was an issue appropriate for declaratory judgment. The validity of the Confidentiality Agreement was not expressly put at issue in the Colón matters. Instead, World Mission sought to enforce the Confidentiality Agreement against Gonzalez, who was not a party to that action. Accordingly, when Gonzalez filed this declaratory-judgment action, he had a right to determine the validity of that Agreement, and there was a clear judicable controversy concerning the validity of the Agreement.

The real issue is the substantive ruling on the validity of the Confidentiality Agreement. That issue is a question of law, which we review de novo. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019).

A contract arises from an offer and acceptance and must be sufficiently definite so that the performance expected of each party can be ascertained with reasonable certainty. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). Moreover, "contracts are enforceable only if they are supported by consideration." Sipko v. Koger, Inc., 214 N.J. 364, 380 (2013).

The trial court found the Confidentiality Agreement unenforceable on several different grounds, including procedural unconscionability, substantive

unconscionability, and lack of consideration. We need only address the lack of consideration.

There was no consideration supporting the Confidentiality Agreement. The Agreement is clear on its face that it did not relate to Gonzalez's role at World Mission's IT department or his involvement in litigation. Instead, by its express terms it addressed his role as a congregant of World Mission. World Mission, however, provided no consideration for the Confidentiality Agreement. The Confidentiality Agreement was completely one-sided: it only restricted Gonzalez. At the time that Gonzalez signed the Agreement in January 2012, he was already a congregant and deacon. World Mission did not provide any consideration. On that basis alone, the Agreement is unenforceable as a matter of law.

C.    The Injunction

World Mission contends that the trial court erred in denying in part its request for injunctive relief concerning the protection of documents and information. That issue came before the trial court on a motion and cross-motion for summary judgment.

We review rulings on motions for summary judgment de novo, applying the same standard as the trial court. Davis v. Brickman Landscaping, Ltd., 219

N.J. 395, 405 (2014). Accordingly, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 406 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). If there are no genuine issues of material fact, we "decide whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

A party seeking a permanent injunction is required to demonstrate that its "legal right to such relief has been established and that the injunction is necessary to prevent a continuing, irreparable injury." Verna v. Links at Valleybrook Neighborhood Ass'n, Inc., 371 N.J. Super. 77, 89 (App. Div. 2004). Equitable remedies such as injunctive relief will generally be reversed only for an abuse of discretion. Sears Mortg. Corp. v. Rose, 134 N.J. 326, 354 (1993).

World Mission sought an injunction preventing Gonzalez from disclosing certain documents based on the attorney-client privilege, work-product doctrine, and the cleric-penitent privilege. Those contentions were first reviewed by a special discovery master and then by the trial court.

Initially, we note that World Mission has not properly presented this issue for our review. Under Rule 2:6-1(a)(1)(I), defendant was required to provide us with the "parts of the record . . . as are essential to the proper consideration of the issues." World Mission, however, did not submit any of the documents considered by the trial court in ruling on the injunctive relief. Instead, this court has only Appendices A and B, which were attached to an order and are merely brief descriptions of the contents of the documents and materials. Because we cannot review the substance of World Mission's contention, we dismiss this aspect of its appeal for failure to comply with Rule 2:6-1(a)(1). Noren v. Heartland Payment Sys., Inc., 449 N.J. Super. 193, 195 (App. Div. 2017).

Even if we were to reach the substance, World Mission has identified no error of law in the trial court's determination of the applicable privileges and doctrines. The trial court correctly defined the attorney-client privilege, the work-product doctrine, and the cleric-penitent privilege. See N.J.S.A. 2A:84A-20, N.J.R.E. 504, O'Boyle v. Borough of Longport, 218 N.J. 168, 185-86 (2014) (attorney-client privilege); R. 4:10-2(c), Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340 N.J. Super 254, 259-60 (App. Div. 2001) (attorney work-product doctrine); N.J.S.A. 2A:84A-23, N.J.R.E. 511, State v. J.G., 201 N.J. 369, 383-84 (2010) (cleric-penitent privilege). World Mission has made no

21

showing that the trial court misapplied those privileges in granting in part and denying in part its request for injunctive relief.

We also note that Gonzalez recommends that we remand the March 19, 2020 order "to permit identifying non-privileged information relating to the personal and spiritual concerns of [World Mission] members nevertheless entitled to receive carefully-circumscribed and prospective protection." In that regard, Gonzalez acknowledges that he should be precluded from revealing the identity of World Mission members who revealed personal and spiritual concerns in confidence to him. We decline this recommendation for a remand. Instead, if Gonzalez believes the injunction should be expanded, he can enter into an agreement with World Mission.

Finally, we note that World Mission made numerous contentious arguments on this appeal. Many of those arguments contained mischaracterizations of the record, hyperbole, or exaggerations. To the extent that we have not addressed specific arguments raised by World Mission, it is because we deem them insufficient to merit discussion in a written opinion. See R. 2:11-3(e)(1)(E). We note, in that regard, that World Mission focused its arguments on appeal on three orders (the orders entered on February 5, 2019, May 13, 2019, and February 20, 2020) but also argued that "practically every

22

single determination" made by the trial court was an error. Having reviewed World Mission's arguments, we discern no basis for reversing any order entered by the trial court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION