**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2003-18T2

SF1 REAL ESTATE 1, LLC,

     Plaintiff-Respondent,

v.

MARKO MELNITSCHENKO
and LJUBOW MELNITSCHENKO,
his wife,

     Defendants-Appellants,

and

DEUTSCHE BANK, f/k/a BANKERS
TRUST COMPANY AS TRUSTEE
UNDER THAT POOLING & SERVICING
AGREEMENT DATED AUGUST 1, 1992
FOR RTC MORTGAGE PASSTHROUGH
CERTIFICATES SERIES 1992-10, CAROLD
CORPORATION, and STATE OF NEW
JERSEY,

     Defendants.

_____

Argued December 16, 2019 – Decided May 12, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-014704-16.

Thomas J.T.J. Legg argued the cause for appellants (Legg
Law Firm LLC, attorneys; Thomas J.T.J. Legg, on the brief).

Adam D. Greenberg argued the cause for respondent (Honig & Greenberg, LLC, attorneys; Adam D. Greenberg, on the brief).

PER CURIAM

Defendants Marko Melnitschenko and Ljubow Melnitschenko appeal from the Chancery Division's December 7, 2018 order denying their Rule 4:50-1 motion to vacate a May 22, 2018 "Final Judgment of Tax Sale Certificate Foreclosure" entered in favor of plaintiff S1 Real Estate 1, LLC. Plaintiff's predecessor in interest, Stonefield Investment Fund III (Stonefield), purchased a tax sale certificate in 2013 relating to one of defendants' investment properties after defendants did not pay real estate taxes owed for 2012. It then pursued foreclosure, and after defendants failed to respond to service of a second amended complaint, failed to respond to other notices about the foreclosure, and failed to exercise their right of redemption, the Chancery Division entered a default judgment in favor of plaintiff's predecessor. Thereafter, plaintiff substituted in for its predecessor and defendants filed a motion to vacate under

2

Rule 4:50-1. On appeal, defendants contend that the Chancery judge abused her discretion by refusing to vacate the judgment under Rule 4:50-1. We disagree and affirm.

It was undisputed that in 2012, defendants, who are both octogenarians, failed to pay real estate taxes owed for a residential property they owned in Fort Lee, which was not their residence. A tax sale was held on December 4, 2013, at which the certificate was sold to Stonefield for $12,636.77 at zero percent interest plus a $39,300.00 premium to be paid by the purchaser.

On January 12, 2016, Stonefield sent a pre-foreclosure notice to defendants by certified and regular mail addressed to a Guttenberg address, in accordance with N.J.S.A. 54:5-97.1,[1] indicating that it owned the tax lien on defendants' property, which would cost $53,977.59 to redeem. That address was defendants' last known address on file with the Fort Lee tax collector and tax assessor where tax bills were sent for the subject property. Marko[2] signed for the certified mail on January 2016.

---

[1] The service of this notice is not a condition to a tax sale foreclosure. Service of a notice is only required for a plaintiff to obtain a "search fee, counsel fee or other fee related to certified mailings." N.J.S.A. 54:5-97.1.

[2] We refer to the individual defendants by their first name for clarity and to avoid any confusion caused by their common last name.

As no redemption was made, on May 25, 2016, Stonefield filed an "In Personam Complaint in Foreclosure" against defendants. On September 9, 2016, defendants' then-attorney, Benjamin De Sena, wrote to Stonefield's attorney requesting proof of service and a copy of the complaint. The letter made reference to the complaint's docket number.

Defendants did not respond to the complaint. According to Ljubow, in a certification she filed in support of her motion to vacate, that attorney was hired only "to verify the sums alleged were still owed," which she thought would have been paid from funds owed to defendants "from the unclaimed property section of New Jersey." Moreover, she acknowledged that she owned multiple properties, had "been the subject of other tax sales, however in each and every time [she] . . . had an opportunity to pay them prior to [her] property being taken," and for that reason "thought [she] had more time and never believed that [her] property could be taken from [her] in such a short period of time. "

The other ten properties owned by defendants included their home in Englewood Cliffs that was assessed at more than one million dollars, and properties in Fairview, North Bergen, Guttenberg and Wantage. The other tax sales impacted five preparties in North Bergen, one in Wantage, and one in

4

Fairview, all relating to taxes that remained unpaid during the years from 2010 to 2013.

On September 23, 2016, Stonefield filed a second amended complaint to add the assignee of a mortgage encumbering defendants' property. At that time, Stonefield's attorney replied to De Sena's September 9, 2016 letter, enclosing the second amended complaint and summons and requesting that defendants "execute the [a]cknowledgment of [s]ervice." Defendants did not respond. Stonefield then personally served defendants with the second amended complaint on April 26, 2017. The affidavit of service indicated that Marko was the individual served and described him as between fifty-one and sixty-five years old, between 5'4" and 5'8" in height, weighed over 200 pounds, had white skin, gray hair, and a beard. Defendants did not respond to the second amended complaint.

After Stonefield requested that a default be entered against defendants on June 14, 2017, a default was entered by the court, and plaintiff served defendants with the filed default by regular mail. On October 4, 2017, Stonefield "filed a motion for an order fixing the amount, time and place [of] redemption," which was served on defendants by certified and regular mail at their Englewood Cliffs

5

home, with Marko having signed for the certified mail on October 7, 2017. Defendants did not respond to the motion.

The Chancery judge entered an order on October 30, 2017, fixing the redemption price at $80,103.65, and set the date and place of redemption as December 14, 2017, at the office of the tax collector in Fort Lee. This order was served on defendants by certified and regular mail at their Englewood Cliffs residence on November 16, 2017 and November 17, 2017. Defendants did not seek to make redemption, and on May 22, 2018 final judgment was entered, foreclosing defendants' right of redemption as to the property.[3]

On August 8, 2018, plaintiff's counsel received a telephone call from defendants' new attorney, who advised him that defendants "were never served with a summons and complaint." According to plaintiff's attorney, defendant's attorney "seemed quite surprised when [he learned] . . . that [defendants] had been personally served and . . . even retained an attorney" who contacted plaintiff's attorney earlier.

---

[3] Before the entry of the default judgment, in March 2018, Stonefield assigned the tax sale certificate to plaintiff, which later obtained a court order permitting it to substitute for Stonefield. A copy of the motion and the order were served on defendants by regular mail.

On November 2, 2018, defendants filed a motion to vacate final judgment. Defendants argued that they were not aware of the default judgment against them until after it had been entered. In Ljubow's supporting certification, she stated that she and her husband were "at times very confused as to whether or not th[e] taxes [they had failed to pay] were in fact still owed as [they] had believed that they may have been satisfied by funds . . . being held in the New Jersey [u]nclaimed [p]roperty [f]und." She acknowledged that they "were at times irresponsible for not timely paying [their] taxes," but contended that they "were unsure what taxes were in fact due." She denied that she or Marko were ever aware of the notices and complaints allegedly sent by certified mail and indicated that the signature on the January 12, 2016 pre-foreclosure notice was not Marko's.

Ljubow also explained that she and Marko suffered from multiple hardships, including Marko being ill, the demise of their family business and subsequent financial struggles, and that the Fort Lee property was occupied by defendants' unemployed adult daughter who did not have anywhere else to live. Ljubow did not state that the description of the individual in the affidavit of service was not Marko nor did she supply any confirmation from a health care provider about Marko's medical condition, especially during the years

7

immediately preceding when the foreclosure complaint was filed. Notably, during that time period, defendants had filed an answer and defended another action affecting a different property located in North Bergen, in which they signed a stipulation of settlement resolving the matter on March 30, 2017, one month before being served in this matter.

On December 7, 2018, the parties appeared for oral argument. At oral argument, Ljubow stated under oath that she handled all of the family's business interests. In her oral decision supporting the denial of defendants' motion, the Chancery judge first addressed the service issue and found that service was made at defendants' residence on a competent adult, and was therefore proper. Next, the judge addressed Marko's mental incapacity and rejected defendants' attempt to compare the instant case to Bergen-Eastern Corp. v. Koss, 178 N.J. Super. 42 (App. Div. 1981), finding that the situation in that case was not analogous to the situation here. Despite Marko's illness and the fact that he had been recently hospitalized for several months, the judge stated the "matter goes back to 2012," and in that time, Ljubow stated that she handled all of the family's business interests, and "reasonably could be expected to contact the local [taxing] authority" regarding the money they owed. Although the judge agreed with

defendants that "[i]t [did] seem harsh that an individual would lose half a million dollar property for . . . $100,000 in debt," she concluded "that [was] the law."

The judge found no exceptional circumstances existed, that defendants "had years to make this right," and although defendants' daughter resided at the property, it was "not a residence," but an investment property, and "the bottom line is that . . . [defendants were] not losing their home." The judge concluded that there was no excusable neglect, and defendants' contention that Ljubow was confused as to whether the money owed to her "in the State fund would" be applied as a credit was unpersuasive. The judge noted that defendants were represented by counsel throughout the proceeding and their prior attorney "was well aware that this matter was pending," negating any argument that they were unaware of the taxes owed. Additionally, nothing in the record described Marko's physical or mental state throughout the action. This appeal followed.

On appeal, defendants argue that they were entitled to relief because they established excusable neglect and a meritorious defense under Rule 4:50-1(a); they "presented evidence that the foreclosure [judgment] was void justifying relief under R[ule] 4:50-1(d) . . . or R[ule] 4:50-1(e) due to insufficiency of careful security of . . . plaintiff's affidavit of inquiry and the windfall between the tax sale certificate purchase and [the] property's value"; and they

demonstrated exceptional circumstances under Rule 4:50-1(f).  We find no merit to these contentions.

We review a decision on a motion to vacate a default judgment under Rule 4:50-1 for "a clear abuse of discretion."  US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).  To warrant reversal, the movant must demonstrate that the motion judge's "decision [was] 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007) (Rivera-Soto, J., dissenting)).

In determining whether a party should be relieved from a judgment under the Rule, courts must balance "the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case."  Id. at 467 (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)).  When a trial court considers a motion to vacate a default judgment, the motion must be viewed "with great liberality," and "every reasonable ground for indulgence" is tolerated "to the end that a just result is reached."  Mancini, 132 N.J. at 334 (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.), aff'd, 43 N.J. 508 (1964)).

Where a procedural violation is involved, additional considerations are implicated, namely, "[t]he defendant's right to have the plaintiff comply with procedural rules[, which] conflicts with the plaintiff's right to an adjudication of the controversy on the merits." Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 513 (1995) (quoting Zaccardi v. Becker, 88 N.J. 245, 252 (1982)). In all cases, however, "justice is the polestar and our procedures must ever be moulded and applied with that in mind." Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 195 (App. Div. 1985) (quoting N.J. Highway Auth. v. Renner, 18 N.J. 485, 495 (1955)).

At the outset, and contrary to plaintiff's contention on appeal, we conclude the Chancery judge correctly considered defendants' application under Rule 4:50-1. While the Tax Sale Law, N.J.S.A. 54:5-1 to -137, states that a tax sale "judgment shall be final upon the defendants, . . . and no application shall be entertained to reopen the judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit," N.J.S.A. 54:5-87, Rule 4:50-1 governs a motion for relief from a tax sale foreclosure judgment, notwithstanding N.J.S.A. 54:5-87. See M & D Assocs. v. Mandara, 366 N.J. Super. 341, 351 (App. Div. 2004) (holding that Rule 4:50-1 is paramount); see also Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J.

Super. 159, 166 (App. Div. 2005) (interpreting the three-month deadline). The guiding principles are that the statutory limitation and the underlying policy to grant stability of foreclosure judgments informs a court's exercise of its discretion under the Rule. Phillipsburg, 380 N.J. Super. at 166-67; Koss, 178 N.J. Super. at 44-45.

Rule 4:50-1 permits a court to "relieve a party . . . from a final judgment" under certain circumstances. Implicated here are those described in subsections (a), (d), (e) and (f) of the Rule.

Relying upon subsection (a), defendants contend that they demonstrated "excusable neglect and a meritorious defense justifying relief" from the judgment. Relying on Koss, defendants argue that their age, the insufficient service of foreclosure notices, and Marko's poor health entitles them to relief. They explain that Ljubow hired their prior attorney "only to determine whether [tax lien] monies were owed on the property and not as to the foreclosure itself since . . . she was never personally served." Additionally, they argue that the initial pre-foreclosure notice was "sent to a visibly abandoned property" that was not their place of residence and that other issues with service were present, including whether Marko actually received the notices in light of the estimated age and height on the affidavit of service. Defendants also argue that failure to

follow the court rules regarding notice is also enough, on its own, to warrant vacating the default judgment. Finally, defendants contend that plaintiff "circumvent[ed]" their rights to due process.

Under subsection (a), relief may be afforded upon a showing of "mistake, inadvertence, surprise, or excusable neglect." R. 4:50-1(a). Relief under section (a) "requir[es] a showing of excusable neglect and a meritorious defense." Guillaume, 209 N.J. at 468. "'Excusable neglect' may be found when the default was 'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.'" Ibid. (quoting Mancini, 132 N.J. at 335).

Here, defendants have not demonstrated excusable neglect. Defendants were served the second amended complaint properly under Rule 4:4-4(a)(1), as it was delivered to defendants "dwelling place or usual place of abode with a competent member of the household of the age of [fourteen] or over then residing therein" accepting service. Nothing stated by Ljubow in her certification undermined the validity of the service of process.

Additionally, defendants' reliance on Koss to argue that they demonstrated excusable neglect is inapposite. In Koss, the defendant was an elderly woman who had "a history of continuing, serious psychiatric problems with several hospitalizations for mental illness" and "knew about the foreclosure action [but]

13                                                      A-2003-18T2

did not understand its import." <u>Koss</u>, 178 N.J. Super. at 45-46. Here, although both defendants are elderly and Marko appears to experience health issues related to forgetfulness, Ljubow stated that she historically controlled the business and financial aspects of the couple's numerous real estate properties. In any event, unlike the <u>Koss</u> defendant, Ljubow provided no medical evidence relating to Marko's alleged conditions.

Here, defendants confirmed that they are real estate investors who were familiar with the need to pay taxes and with the Tax Sale Law's foreclosure provisions. Despite Ljubow's claims of Marko's incapacity, they both defended and resolved another litigation right before being served personally in this matter. Under these circumstances, defendants' failure to respond was not an "honest mistake" consistent with "due diligence," especially in light of their receiving notices regarding the taxes owed and a pending foreclosure action over a period of nearly six years. <u>See</u> <u>Guillaume</u>, 209 N.J. at 468-69 (quoting <u>Mancini</u>, 132 N.J. at 335) ("Notwithstanding the repeated notices, the [defendants] took no action to respond to the foreclosure complaint, and the record reflects no excuse for their inaction."). <u>Rule</u> 4:50-1 "requires that courts be indulgent of litigants who deserve such indulgences." <u>Fineberg v. Fineberg</u>, 309 N.J. Super. 205, 217 (App. Div. 1998) (rejecting a defendant's reliance on

Koss after finding him to be "a sophisticated businessman who [was] involved in multi-million dollar transactions, who, according to the record, [was] maintaining or defending at least fifteen active lawsuits (some of which involve[d] defendant acting pro se)"). Defendants did not establish themselves worthy of that indulgence.

Even if defendants were able to demonstrate excusable neglect, they have not demonstrated a meritorious defense. "Everybody knows that taxes must be paid." Bron v. Weintraub, 42 N.J. 87, 91 (1964). Defendants admit to not paying the taxes, that the taxes were owed, and that they retained an attorney once the complaint was filed, albeit only to determine what was owed. Afterward, and inexplicably, they took no action. Their assertion for the next two years, that the taxes would have been paid from another source, is unavailing. The record supported the Chancery judge's conclusion that there was no basis to grant them relief from the judgment under subsection (a).

Defendants also contend that the trial court abused its discretion in not granting relief under Rule 4:50-1(d), as the "insufficient notice and improper service of process render[ed] the [judgment] . . . void." Additionally, because of the windfall that plaintiff would realize due to the difference between the tax sale certificate purchase and the property's value, "careful scrutiny of the

affidavit of inquiry for service upon the [d]efendants is required." Here, defendants argue it "pales in demonstrating due diligence to locate and properly notice and serve" them.

Rule 4:50-1(d) provides relief from judgment when "the judgment or order is void" and subsection (e) applies where "the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application."

We conclude, as did the Chancery judge, defendants were not entitled to relief under section (d) because service of process was valid. As to defendants' argument that the judgment is not equitable because there is a difference between the tax sale and the property's value, we disagree. A property owner who fails to pay taxes for several years and ignores multiple notices about his or her failure is not entitled to equity. "A property owner knows that he[ or she] must pay taxes on his[ or her] property, and that if he[ or she] fails to do so the municipality will sell the property (or the tax sale certificate) for the price of taxes due and owing." Township of Long Beach v. Lot No. 3, Block No. 9, 189 N.J. Super. 116, 125 (Ch. Div. 1983). "[E]quity aids the vigilant, not those who sleep on their rights. . . ." Brunswick Hills Racquet Club, Inc. v. Route 18

16

Shopping Ctr. Assocs., 182 N.J. 210, 228 (2005) (quoting Brick Plaza, Inc. v. Humble Oil & Ref. Co., 218 N.J. Super. 101, 104 (App. Div. 1987)).

Defendants final argument is that "the totality of facts presented" justify exceptional circumstances to grant relief under Rule 4:50-1(f) for the reasons expressed in support of their arguments under subsection (a) and because they offered to pay the full amount owed to plaintiff. We find no merit to their contention.

The Rule permits a default judgment to be vacated for "any other reason justifying relief from the operation of the judgment," R. 4:50-1(f), and "affords relief only when 'truly exceptional circumstances are present,'" Guillaume, 209 N.J. at 468 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994)). In such circumstances, the rule is "'as expansive as the need to achieve equity and justice' [but] . . . is limited to 'situations in which, were it not applied, a grave injustice would occur.'" Id. at 484 (citations omitted). "The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable." Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999); see also Badalamenti v. Simpkiss, 422 N.J. Super. 86, 103 (App. Div. 2011).

Considering that subsection (f) contemplates exceptional circumstances, "each case must be resolved on its own particular facts." Baumann v. Marinaro, 95 N.J. 380, 395 (1984). "Among the factors to be taken into account . . . are the 'extent of the delay in making the application for relief, the underlying reason or cause, fault or blamelessness of the litigant, and any prejudice that would accrue to the other party.'" In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002) (quoting C.R. v. J.G., 306 N.J. Super. 214, 241 (Ch. Div. 1997)).

Here, defendants present no circumstances that were exceptional. The subject property is not defendants' home. The loss of an investment property does not weigh heavily in favor of them, as would the loss of their home, especially in the context of the Tax Sale Law's goal of finality. See In re Princeton Office Park LP v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 66 (2014) ("The legislative purpose is to 'aid municipalities in raising revenue,' by attracting 'third parties to the opportunity to acquire . . . property.'" (Alteration in original) (quoting Bron, 42 N.J. at 91-92)); see also Malone v. Midlantic Bank, N.A., 334 N.J. Super. 238, 250 (Ch. Div. 1999) (citing N.J.S.A. 54:5-85) ("[T]he express policy of the Tax Sale [Law] is that it be liberally constructed so as to bar the right of redemption, not preserve it, the goal being that marketable titles to property be secured."), aff'd o.b., 334 N.J. Super. 236 (App.

Div. 2000). The fact that they are permitting their daughter to live there without paying rent does not change the nature of the premises.

Moreover, although defendants claim they offered to pay plaintiff for the amount of taxes they undisputedly owed, they never tendered any amount that was undisputedly owed at any point since 2012. The record therefore again supports the Chancery judge's conclusion that "exceptional circumstances" were not established.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2003-18T2